# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TYLER BAKER, individually and on behalf of all other similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>EQUIFAX, INC.,<br>    Defendant. | No.:<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Tyler Baker, individually and on behalf of the class defined below, brings this Class Action Complaint ("Complaint") against Equifax, Inc. ("Equifax" or "Defendant"). Plaintiff's allegations against Defendant are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## INTRODUCTION

1.      Equifax is an American multinational consumer credit reporting agency headquartered in Atlanta, Georgia, and is one of the three largest consumer credit reporting agencies, along with Experian and TransUnion.

2.      On August 2, 2022, news broke that over a three-week span of time from March 17 until April 6[1], Equifax provided inaccurate credit scores on behalf of millions of U.S. consumers applying for auto loans, mortgages and credit cards from banks and nonbank lenders large and small.[2]

3.      Equifax reported that the problem occurred because of a "coding issue" when it was making a change to one of its servers and "was in place over a period of a few weeks and resulted in the potential miscalculation" of credit scores ("Equifax's Failure").[3]

4.      Multiple people impacted by the Equifax's Failure reported that the erroneous scores were sometimes off by 20 points or more, which was enough to alter the interest rates consumers were offered, or to result in their loan/credit applications being rejected altogether.

5.      Equifax is a consumer reporting agency, as defined by the Fair Credit Reporting Act, 16 U.S.C. § 1681, et seq. ("FCRA").  The FCRA is a federal law that helps to ensure the accuracy, fairness and privacy of the information in

---

[1] https://www.cbsnews.com/news/equifax-wrong-credit-score-error-2022/ (last visited August 8, 2022).

[2] https://www.wsj.com/articles/equifax-sent-lenders-inaccurate-credit-scores-on-millions-of-consumers-11659467483?st=l13znb3fsy0ik1n&reflink=desktopwebshare_permalink (last visited August 8, 2022).

[3] https://www.cnn.com/2022/08/03/business/equifax-wrong-credit-scores/index.html (last visited August 8, 2022).

consumer credit bureau files.[4] The law regulates the way credit reporting agencies, such as Equifax, can collect, access, use and share the data they collect in consumer reports, and obligates Equifax to provide accurate credit information for consumers.[5]

6.     Section 607(b) of the FCRA, 15 U.S.C. § 1681e (b) requires Equifax to provide accurate credit information:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

Thus, by failing to provide accurate credit reporting services, Equifax violated FRCA.  It was incumbent upon Equifax to ensure that it had adequate systems and procedures in place to ensure the accuracy of its credit reporting services, yet Equifax failed to do so.  Furthermore, Equifax allowed this error to persist for nearly three weeks before it detected and eradicated the issue.

7.     Only Equifax was in a position to implement necessary stopgaps and protections to detect errors in its credit reporting services, and consumers had no reason to know or believe that Equifax would fail to do so.

---

[4] https://www.experian.com/blogs/ask-experian/credit-education/report-basics/fair-credit-reporting-act-fcra/#:~:text=The%20Fair%20Credit%20Reporting%20Act%20(FCRA)%20is%20a%20federal%20law,collect%20in%20your%20consumer%20reports (last visited August 8, 2022).
[5] *Id*.

8.      Furthermore, Equifax offers credit monitoring service to consumers at the price of $4.95 for the first 30 days, then $19.95 per month, which allows consumers to, *inter alia*, view their credit scores from Equifax and the other two major credit bureaus at any time.[6] To the extent consumers paid for Equifax's credit monitoring service, they did not receive the benefit of the bargain they paid to receive and thus incurred out-of-pocket losses.

9.      As a direct and proximate result of Equifax's failure to comply with its obligations under the FCRA, Plaintiff and the Class members have suffered actual injury, economic damages, and other injury and actual harm as described herein.

## PARTIES

**A.      Plaintiff Baker**

10.      Plaintiff Tyler Baker is and was a resident of Vermont during the relevant class period.

11.      In the years prior to the Equifax Failure, Plaintiff Baker had not been denied credit.

---

[6] https://www.equifax.com/equifax-complete/Equifax/?complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaigni d=71700000061086345&sakwid=43700050281164756&gclid=Cj0KCQjw_7KXBhCoARIsAPd PTfgDdmzOPR-T81m8vC-AXre54s6_m3571hyO34KSivvvKVuP_ZBZJtUaAocpEALw_ wcB&gclsrc=aw.ds (last visited August 8, 2022).

12.     Around late March 2022, Plaintiff Baker applied for a credit card that offered a 0% interest rate on balance transfers.  Shortly after he applied for the credit card, he was denied.

13.     The credit report that Equifax furnished concerning Plaintiff Baker that was inaccurate by 49 points.

14.     Plaintiff Baker subsequently applied for four more credit cards, all of which he was denied.

15.     The credit card companies never informed Plaintiff Baker why he was denied.  Nor did Equifax ever inform him that his credit report was inaccurate.

16.     As a result, Plaintiff Baker has been forced to pay higher interest on his existing credit card.

**B.     Defendant**

17.     Defendant Equifax, Inc. is incorporated in, and a citizen, of Georgia and headquartered at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

18.     Equifax is an American multinational consumer credit reporting agency and one of the "big three" largest consumer credit reporting agencies, along with Experian and TransUnion.  Equifax collects and aggregates information on over 800 million individual consumers and more than 88 million businesses worldwide.  In addition to credit and demographic data and services to business,

Equifax sells credit monitoring and fraud prevention services directly to consumers.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 Class Members, the amount in controversy exceeds $5 million exclusive of interest and costs, and many Class Members are citizens of states different from Equifax.

20.     This Court has personal jurisdiction over Equifax because it maintains its headquarters in Georgia, regularly conducts business in Georgia, and has sufficient minimum contacts in Georgia.  Equifax intentionally avails itself of this jurisdiction by conducting its corporate operations in Georgia.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Equifax is headquartered in this District, regularly transacts business in this District, and a substantial part of the events, acts and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Equifax Provided Incorrect Credit Scores to Millions of Consumers

22.    Equifax tracks the credit history of millions of borrowers and sells that information to banks and other lenders.[7]

23.    The information Equifax provides affects whether consumers are approved for certain loans and what interest rate they are obligated to pay.[8]

24.    On May 27, 2022, reporting revealed that Equifax allegedly provided incorrect credit scores to nearly 25 million consumers seeking loans during a three-week period earlier in 2022.[9]

25.    On August 2, 2022, Equifax reportedly confirmed that its technology experienced a "coding issue" which caused it to send inaccurate credit scores to lenders from mid-March to early April.[10]

26.    During this time, Equifax reportedly sent incorrect scores on individuals applying for mortgages, auto loans, and credit cards.[11]

---

[7] https://abc11.com/equifax-scandal-credit-score-error-report/12097749/ (last visited August 5, 2022).
[8] *Id.*
[9] https://nationalmortgageprofessional.com/news/equifax-telling-lenders-potential-errors-credit-scores (last visited August 5, 2022).
[10] https://www.wsj.com/articles/equifax-sent-lenders-inaccurate-credit-scores-on-millions-of-consumers-11659467483 (last visited August 5, 2022).
[11] *Id.*

27.     However, Equifax concealed that it was the cause of the errors until May 2022.[12]

28.     Consumers reported that their scores were off by more than 25 points in either direction, or that they went from having a credit score to no score at all.[13]

29.     On information and belief, some scores were inaccurate by as much as 50 points.

30.     Although Equifax stated that the underlying information was not changed, a credit-score shift of 25 points can be the difference between being approved or denied financial products.[14]

**B. Equifax Negatively Affected Consumers Applying for Credit**

31.     Consumers utilize credit information to determine whether and when to apply for loans and housing, and whether they will ultimately be approved.

32.     Like consumers, lenders rely on credit scores to make business decisions.

---

[12] https://nationalmortgageprofessional.com/news/equifax-telling-lenders-potential-errors-credit-scores (last visited August 5, 2022).
[13] https://www.businessinsider.com/equifax-credit-faulty-scores-led-to-rejected-mortgage-loan-applications-2022-8 (last visited August 5, 2022).
[14] https://www.cbsnews.com/news/equifax-wrong-credit-score-error-2022/ (last visited August 5, 2022).

33.     In May 2022, Equifax stated that data quality and accuracy are at the heart of everything Equifax does and they "take this technology issue very seriously."[15]

34.     Despite Equifax's public assurances that it has resolved the problem in early April, millions of consumers remain impacted.[16]

35.     On information and belief, the erroneous credit scores continued to negatively impact consumers applying for credit.

36.     The significant change in credit scores was "enough to alter the interest rates consumers were offered or to result in their applications being rejected altogether."[17]

37.     The erroneous scores led to higher interest rates on loans and rejected loan applications.[18]

## C. Equifax is Obligated to Ensure Accuracy in Consumer Reports Under the Fair Credit Reporting Act

38.     Equifax is one of three major credit-reporting companies in the United States as defined in the FCRA. 15 U.S.C. § 1681(a)(f).

---

[15] https://nationalmortgageprofessional.com/news/equifax-telling-lenders-potential-errors-credit-scores (last visited August 5, 2022).
[16] *Id.*
[17] https://www.wsj.com/articles/equifax-sent-lenders-inaccurate-credit-scores-on-millions-of-consumers-11659467483 (last visited August 5, 2022).
[18] https://www.yahoo.com/news/equifax-reportedly-gave-millions-faulty-195331517.html (last visited August 5, 2022).

39.    Equifax generates and sells consumer credit reports containing consumer information and details of a consumer's credit history to lenders.

40.    A consumer report is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used to expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" in lending decisions.[19]

41.    Lenders and landlords utilize consumer credit reports to determine whether and on what terms a consumer is offered loans, mortgages, credit cards, and housing.

42.    The accuracy of consumers' credit reports is highly important to lenders and businesses alike.  According to the Consumer Financial Protection Bureau, "[a]ccuracy in consumer reports is of vital important to the consumer reporting system, particularly as consumer reports play an increasingly important role in the lives of American consumers."[20]

---

[19] 15 U.S.C. § 1681(a), *et. seq.*
[20] Bureau of Consumer Fin. Prot., Fair Credit Reporting; Name-Only Matching Procedures, 86 FR 62468, 62468 (Nov. 10, 2021).

43.    Equifax states that "[b]usinesses rely on us for consumer and business credit intelligence, credit portfolio management, fraud detection, decisioning technology, marketing tools, and human resources-related services."[21]

44.    Equifax promises its customers that it would deliver accurate information about consumers.  Equifax's privacy policy stated, in pertinent part: "We have built our reputation on our commitment to deliver reliable information to our customers (both businesses and consumers) and to protect the privacy and confidentiality of personal information about consumers."[22]

45.    The FRCA creates legal standards and requirements to ensure accurate credit reporting.[23]

46.     One of these requirements is that, when preparing a consumer report, credit reporting agencies like Equifax "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."[24]

---

[21] https://www.equifax.com/ (last visited August 5, 2022).
[22] http://equifax.com/privacy/ (last visited August 5, 2022).
[23] Bureau of Consumer Fin. Prot.,Fair Credit Reporting; Name-Only Matching Procedures, 86 FR 62468 (Nov. 10, 2021), available at https://files.consumerfinance.gov/f/documents/cfpb_fair-credit- reporting_advisory-opinion_2022-07.pdf.
[24] 15 U.S.C. § 1681(e)(b).

47.    This includes maximum possible accuracy with respect to the information that is included on an individual's consumer report – including, but not limited to credit score itself.[25]

48.    The Bureau has recently affirmed that, "[i]n preparing consumer reports, it is not a reasonable procedure to assure maximum possible accuracy" if a consumer reporting agency uses "insufficient identifiers to match information to the consumer who is the subject of the report."[26]

## <u>CLASS ALLEGATIONS</u>

49.    Plaintiff brings this action pursuant to the provisions of Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following proposed classes:

> All individuals in the United States whose credit score or consumer credit report was inaccurately reported by Equifax as a result of Equifax's Failure.

> <u>Credit Monitoring Class</u>

> All individuals in the United States who paid for credit monitoring services and whose credit score, or consumer credit report was inaccurately reported by Equifax as a result of Equifax's Failure.

---

[25] Consumer Fin. Prot. Bur., Fair Credit Reporting: Permissible Purposes for Furnishing and Using and Obtaining Consumer Reports, 87 FR 41243 (July 7, 2022), available at https://www.federalregister.gov/d/2022-14823/p-41.
[26] *Id.*

50.     Excluded from the Class are Equifax, its employees, officers, directors, legal representatives, heirs, successors, wholly- or partly-owned, and its subsidiaries and affiliates; proposed Class counsel and their employees; the judicial officers and associated court staff assigned to this case and their immediate family members; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family.

51.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

52.     Numerosity.  Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Class members can be easily be identified during the pendency of this action using records maintained by Equifax, and notified by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

53.     Commonality and Predominance.  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.  Whether Equifax engaged in the conduct alleged herein;

    b.  Whether Equifax had in place adequate procedures and processes to ensure that it provided correct credit information in its credit reporting;

    c.  Whether Equifax had in place adequate procedures and processes to prevent the incorrect reporting of credit information;

    d.  Whether Equifax had in place adequate procedures and processes to detect incorrect credit information;

    e.  Whether Equifax adequately disclosed the Equifax Failure to lenders and consumers;

    f.  Whether Equifax's conduct alleged herein violated the FCRA;

    g.  Whether Equifax's conduct alleged herein constitutes negligent, reckless, wilfull, or knowing conduct;

    h.  Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

    i.  Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

54.    <u>Typicality</u>.  Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were impacted by the Equifax Failure and comparably injured through Equifax's wrongful conduct as described above.

55.    <u>Adequacy</u>.  Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained

counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

56.     Declaratory and Injunctive Relief.  Federal Rule of Civil Procedure 23(b)(2): Equifax has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

57.     Superiority.  Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Equifax, so it would be impracticable for the members of the Class to individually seek redress for Equifax's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides

the benefits of single adjudication, economy of scale, and comprehensive

supervision by a single court.

## VIOLATIONS ALLEGED

## FIRST CAUSE OF ACTION
**WILLFUL VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681,** *et seq*
**(On Behalf of Plaintiff and the Class)**

58.     Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this Complaint.

59.     FCRA defines a "consumer reporting agency" as any person which,

for monetary fees or on a cooperative nonprofit basis, regularly engages, in whole

or in part, in the practice of assembling or evaluating consumer credit information

or other consumer information for the purpose of furnishing "consumer reports" to

third parties, and which uses any means or facility of interstate commerce for the

purpose of preparing or furnishing consumer reports.  15 U.S.C. §1681a(f).  Thus,

at all times relevant hereto, Equifax was a consumer reporting agency as defined

by the by FCRA.

60.     FCRA defines a "consumer report" as any written, oral, or other

communication of any information by a consumer reporting agency bearing on a

consumer's credit worthiness, credit standing, credit capacity, character, general

reputation, personal characteristics, or mode of living, which is used, expected to

be used, or collected, in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for (i) credit or insurance to be used primarily for personal, family, or household purposes, (ii) employment purposes, or (iii) any other purpose authorized by 15 U.S.C. § 1681b. 15 U.S.C. § 1681a(d)(1). Thus, at all times relevant hereto, Equifax compiled and maintained "consumer reports" on behalf of Plaintiff and all Class members.

61.    Plaintiff and Class Members are consumers as defined by FCRA in 15 U.S.C. § 1681a(c).

62.    As a consumer reporting agency, Equifax was (and continues to be) required to identify, implement, maintain and monitor the proper measures, policies, procedures, protocols, and software and hardware systems to ensure the accuracy of the consumer credit information in its possession, custody and control, including Plaintiff's and Class Members' credit reports and credit scores. *See* 15 U.S.C. 1681(b).

63.    As a consumer reporting agency, Equifax's actions or inactions that allowed for the Equifax Failure violate its duties and obligations as a credit reporting agency under the FCRA.

64.    Defendant's actions or inactions that allowed for the Equifax Failure including inaccurate credit entries and or credit scores to be included on consumer

reports also violate the duties and obligations imposed on it as a credit reporting agency, under FCRA.

65.     Defendant has engaged in a number of patterns and practices that led to the Equifax Failure, including failing to implement and maintain adequate, readily available measures and procedures to ensure the maximum possible accuracy of its consumer credit reports, in violation of 15 USC 1681e(b).

66.     Despite knowing, or being in a position to know such that it should have known, that it failed to implement and maintain adequate, readily available measures and procedures to ensure the maximum possible accuracy of its consumer credit reports, Equifax relied on its inadequate measures and procedures and therefore had no reason to believe that all of the information contained in its consumer credit reports was of maximum possible accuracy.

67.     Defendant's failure to ensure the maximum possible accuracy of its consumer credit reports despite knowing or being in a position to know if its inadequate measures and procedures constitutes willful and reckless conduct.

68.     As a direct and proximate result of Equifax's actions and failures that gave rise to the Equifax Failure, as alleged herein, Equifax offered, provided, and furnished Plaintiff's and Class Members' inaccurate consumer reports.  In each instance, Equifax was in violation of FCRA § 1681e.

69.     Equifax's willful failure to use adequate measures and procedures to ensure the accuracy of its consumer credit reports resulted in an unknown, but substantial, number of inaccuracies on Equifax consumer credit reports, in violation of FCRA § 1681e(b).

70.     Under FCRA § 1681, Equifax is liable to Plaintiff and Class members for failing to comply with the requirements that a consumer reporting agency not disclose consumer reports and take measures designed to avoid the unauthorized disclosure of consumer reports.  Equifax therefore is liable to Plaintiff and Class Members for their actual damages as a result of Equifax's failure to comply with FCRA, as well as costs and reasonable attorneys' fees, in amounts to be proven at trial.

71.     In addition, Defendant's failure to comply with the foregoing requirements was willful because Defendant knew or should have known, but recklessly disregarded, that its information verification measures were inadequate and unreasonable and additional steps were necessary to protect Plaintiff and Class Members from the Equifax Failure.

72.     Equifax's acts described herein constitute a pattern or practice of knowing violations, as set forth in Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A).

73.    Each instance in which Equifax has failed to comply with Section 607 of the FCRA constitutes a separate violation of the FCRA for the purpose of assessing monetary damages.

74.    Plaintiff and Class Members also are entitled to recover punitive damages, under 15 U.S.C. § 1681n(a)(2), and their attorneys' fees, litigation expenses, and costs, under 15 U.S.C. § 1681n(a)(3).

**SECOND CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681, *et seq***
**(On Behalf of Plaintiff and the Class)**

75.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

76.    Equifax negligently engaged in the foregoing wrongful actions, inaction and omissions, and failed to exercise reasonably prudent ordinary care by failing to identify, implement, maintain and monitor the proper measures, policies, procedures, and protocols to ensure the maximum possible accuracy of the consumer credit information in its possession, custody and control, including Plaintiff's and Class Members' credit reports and credit scores, which directly and proximately caused harm to Plaintiff and Class Members in violated the FCRA, 15 U.S.C. § 1681, *et seq*.

77.    Equifax repeatedly created inaccurate consumer reports as a result of the Equifax Failure, Plaintiff and Class Members would not have suffered the harm as detailed herein.

78.    Despite knowing, or being in a position to know such that it should have known, that it failed to implement and maintain adequate, readily available measures and procedures to ensure the maximum possible accuracy of its consumer credit reports, Equifax relied on its inadequate measures and procedures and therefore had no reason to believe that all of the information contained in its consumer credit reports was of maximum possible accuracy.

79.    Defendant's failure to ensure the maximum possible accuracy of its consumer credit reports despite knowing or being in a position to know if its inadequate measures and procedures constitutes negligent conduct.

80.    As a direct and proximate result of Equifax's actions and failures that gave rise to the Equifax Failure, as alleged herein, Equifax offered, provided, and furnished Plaintiff's and Class Members' inaccurate consumer reports.  In each instance, Equifax was in violation of FCRA § 1681e.

81.    Equifax's willful failure to use adequate measures and procedures to ensure the accuracy of its consumer credit reports resulted in an unknown, but

substantial, number of inaccuracies on Equifax consumer credit reports, in violation of FCRA § 1681e(b).

82.    Under FCRA § 1681, Equifax is liable to Plaintiff and Class members for failing to comply with the requirements that a consumer reporting agency not disclose consumer reports and take measures designed to avoid the unauthorized disclosure of consumer reports.  Equifax therefore is liable to Plaintiff and Class Members for their actual damages as a result of Equifax's failure to comply with the FCRA, as well as costs and reasonable attorneys' fees, in amounts to be proven at trial.

83.    Each instance in which Equifax has failed to comply with Section 607 of the FCRA constitutes a separate violation of FCRA for the purpose of assessing monetary damages.

84.    Plaintiff and Class Members also are entitled to recover damages and their attorneys' fees, litigation expenses, and costs, under 15 U.S.C. § 1681n(a)(3).

## **RELIEF REQUESTED**

85.    WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

   a.  Certify this action is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; declaring Plaintiff as the representative of the Class, and Plaintiff's counsel as counsel for the Class;

b.  Award statutory damages, compensatory damages, and punitive damages where available, to Plaintiff and the Class Members against Equifax for all damages sustained as a result of its wrongdoing, in an amount to be proven at trial, including interest thereon;

c.  Award nominal damages to Plaintiff and the Class Members against Equifax;

d.  Non-restitutionary disgorgement of all of Equifax's profits that were derived, in whole or in part, from Equifax's provision of inaccurate consumer reports;

e.  Ordering Equifax to disgorge revenues and profits wrongfully obtained;

f.  Award Plaintiff and the Class Members their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

g.  Grant Plaintiff and the Class Members such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues in this action so triable of right.

DATED: August 8, 2022

Respectfully submitted,

*/s/ E. Adam Webb*
E. Adam Webb
G. Franklin Lemond, Jr.
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, S.E., Suite 480
Atlanta, Georgia 30339
Tel: (770) 444-9325
Facsimile: (770) 217-9950
Adam@WebbLLC.com
Franklin@WebbLLC.com

23

Joseph G. Sauder
Mark B. DeSanto
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (888) 711-9975
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
mbd@sstriallawyers.com

*Attorneys for Plaintiff*